389 A.2d 141

COMMONWEALTH of Pennsylvania,

v.

A. L. BACK, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 21, 1977.

Decided July 12, 1978.

Ralph W. Kent, and Kent & Thomas, West Chester, for appellant.

William H. Lamb, District Attorney, West Chester, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from a judgment of sentence of the Court of Common Pleas of Chester County. Appellant was convicted, after a non-jury trial, of indecent exposure and open lewdness. He received two years probation on the indecent exposure charge. No sentence was imposed for open lewdness as the court concluded that it merged into indecent exposure.

Appellant's sole contention is that the evidence was insufficient to prove that he acted knowingly. The *mens rea* requirements of the two offenses are virtually identical. Indecent exposure is defined in the Act of December 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973, 18 Pa.C.S.A. 3127 as follows:

"A person commits a misdemeanor of the second degree if, for the purpose of arousing or gratifying sexual desire of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm."

Section 5901 of the Crimes Code, supra, gives the following definition of open lewdness:

"A person commits a misdemeanor of the third degree if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed."

The Commonwealth's evidence, which must be accepted as true in deciding the sufficiency of the evidence, *Common-*

*wealth v. Murray,* 246 Pa.Super. 422, 371 A.2d 910 (1977), established the following:

On January 10, 1975, a West Goshen Township police officer received a radio call directing him to go to 814 South New Street (appellant's address) in response to a complaint from the house next door that the person living at that address was exposing himself. The officer went to the address and walked around the outside of the house. Nothing appeared to be amiss. Walking along the rear of the house (in the direction of the complainant's house) the officer saw that the shade of a window of the corner room was partially open. He observed a fully-clothed male, whom he later identified as appellant, bend over to pick something up off the floor. He turned the corner and saw that there was another window to the same room. This one had its curtains drawn and its shades down. The officer, joined by his partner, proceeded to the house next door, where Miss Helen Goodwin and Miss Alice Goodwin, sisters, lived. The Goodwin sisters answered the door "with a baseball bat" and "went on to explain  .  .  .  that the next door neighbor had been exposing himself over a period of months every time the light went on in their garage." The officer and his partner went into the garage with one of the sisters and looked through a window that permitted a diagonal view of the curtained window in the house next door. The house was dark. He turned away from the garage window for about 30 seconds, during which time Miss Goodwin turned on the light. He returned to the window and observed that the window next door was no longer dark. At trial he testified:

"At this point there was a bright light coming from the rear window that I had observed the shade closed in before. There was a white male standing there in the window masturbating.

.     .     .     .     .

Myself and Officer Lee left the garage, walked to the Goodwin residence, along the property line toward the

rear. During the length of time we observed the male that was in the window lean out over a spotlight that was in front of himself, between himself and the window, and look down at the Goodwin residence on two separate occasions.

. . . . .

We then proceeded directly in front of the window, standing maybe a foot, foot and one half away from the window. Once again the subject leaned out and looked over the light, looking down toward the Goodwin residence.

. . . . .

He was standing on a small stool, pulled away from the bed and turning over an angle facing down toward the Goodwin residence.

. . . . .

He had what appeared to be a t-shirt or undershirt of some sort thrown back over his shoulder, his chest was exposed, just the arms were in it and the rest of the shirt was back over his shoulder. That was it.

. . . . .

The window shade was fully up and the curtains were drawn back."

The issue, as we noted earlier, is whether appellant's knowledge of the likelihood of his conduct causing affront or alarm to others was proved. We are of the opinion that it was. Appellant, in contending otherwise, makes much of the fact that the window from which he was observed was the closest conceivable observation point, and the fact that the distance between this window and the window from which he put on his display was 84 feet. The undisputed unlikelihood of appellant's antics being viewed from any other vantage point proves, at most, that appellant's intended audience was not the general public. Neither statute requires an intent of affronting or alarming the general

public to be shown.  As for the distance, whatever a reasonable man's expectations as to the possibility of observation would be, appellant's subjective expectations in the matter were demonstrated by the circumstances of his performance: when the Goodwins' garage light went on, his clothes came off, the window shade went up, his curtains were opened, and his spotlight went on.  The possibility that the timing was fortuitous was negated by the officer's testimony, received without objection, that the Goodwin sisters reported that indecent exposure had recently become appellant's habitual response to the light going on in their garage.  Hearsay becomes competent evidence if it is not objected to. *Liuzzo v. McKay,* 396 Pa. 183, 152 A.2d 265 (1959).  We refer appellant to the culpability provisions of the Crimes Code, § 302:

> "(b) A person acts intentionally with regard to a material element of an offense when
>
> .     .     .     .     .
>
> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes *or hopes* that they exist. [Emphasis added.]
>
> .     .     .     .     .
>
> (e) .   .   .   When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally."

Accordingly, appellant's contention to the effect that nothing more than an intendedly private indulgence was proved is rejected.  We agree with the trial court's statement to appellant at sentencing, "[W]hat you were doing was as plain as the nose on your face."

Judgment and sentence affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.