COMMONWEALTH of Pennsylvania, Appellee

v.

**Wanda Faye DeWALT, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 18, 2000.
Filed May 15, 2000.

Amy J. Powers, Middleburg, for appellant.

Barbara A. Reed, Asst. Dist. Atty., Middleburg, for the Com., appellee.

Before DEL SOLE, TODD and TAMILIA, JJ.

TODD, J.:

¶ 1 Wanda Faye Dewalt appeals the judgment of sentence entered June 3, 1999, by the Snyder County Court of Common Pleas Criminal Division. DeWalt was convicted by a jury of one count of Indecent Exposure, 18 Pa.C.S.A. § 3127(a), and one count of Corruption of Minors, 18 Pa. C.S.A. § 6301(a)(1). Immediately following trial, defense counsel moved to set aside the verdict as against the weight and sufficiency of the evidence. On May 12, 1999, the trial court entered its Order denying the motion. Prior to sentencing on June 3, 1999, defense counsel moved for judgment of acquittal. The trial court denied the motion and sentenced DeWalt to three months to two years on the corruption of minors conviction to be served concurrently with a sentence of five years probation on the indecent exposure conviction.

¶ 2 The evidence at trial revealed that DeWalt, while outside on her own back porch in the company of two other adult individuals, lifted her shirt to expose her bra while briefly dancing in a sort of striptease. She then pulled down her jeans along with which came her underwear. Three minor boys, ages 11, 12 and 13, looked on while standing atop a roof next door. The boys testified that DeWalt observed them watching her from the roof. Two of the boys (one of whom, the 12–year–old, was designated by the Commonwealth as the victim) testified that they saw only DeWalt's bra and underwear, while the thirteen-year-old witness testified that he saw appellant's "private area," also described by him as her "pubic area". Although this boy testified that he saw appellant's "private area" and her "pubic

area," he did not testify that he saw De-Walt's genitals.

■ ¶ 3 On appeal, DeWalt argues the evidence was insufficient to prove the charge of indecent exposure. In determining the sufficiency of the evidence, we must accept as true all the evidence of the Commonwealth and all reasonable inferences arising therefrom upon which the trier of fact properly could have reached its verdict. Such evidence must be sufficient in law to prove beyond a reasonable doubt that Appellant was guilty of the crime of which she stands convicted. *Commonwealth v. Riley,* 643 A.2d 1090, 1091 (Pa.Super.1994). Under the statute:

> [a] person commits indecent exposure if that person exposes his or her genitals in any public place or any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm.

18 Pa.C.S.A. § 3127(a).

¶ 4 DeWalt argues that the Commonwealth did not demonstrate at trial any of the elements of indecent exposure, i.e., that any of the witnesses saw her genitals, that she exposed herself in public or in the presence of others, or that she knew her actions would offend, affront or alarm.

¶ 5 We will first address the statutory element pertaining to the requisite public nature of the actions in question. Appellant argues that even if this Court were to determine that she had exposed her "genitalia" as required under 18 Pa.C.S.A. § 3127(a), which she claims the evidence was insufficient to establish, she did not do so in a "public place" or a place where others are present under circumstances in which she knew or should know that this conduct is likely to offend, affront or alarm, as required by the statute. Indeed, although the boys testified that DeWalt looked in their direction before her brief dance, the Court notes that she was in the company of two other adult individuals in the privacy of her own porch in her own backyard while the boys were perched on the roof of a shed in a neighboring yard some distance away and were peering over into DeWalt's yard:

> Q Okay. And you guys were on the roof?
> A Yes.
> Q In your yard?
> A Yes.
> Q So you had to kind of look over into Ms. DeWalt's?
> A Yes.

(Trial Transcript, 5/12/99, 39.)

■ ¶ 6 We agree with Appellant that the evidence adduced at trial was insufficient to establish that her actions took place in a public place or a place where others are present under circumstances in which she knew or should have known that her conduct was likely to offend, affront or alarm as required by the statute.

¶ 7 DeWalt further argues that the arresting officer's testimony impermissibly augmented the victim's testimony because the officer used the word "vagina" when no eyewitness had used that word. Upon thorough review of the record in this case, we find several of DeWalt's arguments to have merit and we reverse.

¶ 8 The thirteen-year-old Commonwealth witness was the only one who testified that he saw Appellant's "private" or "pubic area". He was not listed as the victim in this case. The twelve-year-old "victim" failed to testify that he had witnessed the requisite elements to warrant a conviction of indecent exposure at all. The twelve-year-old and eleven-year-old testified that they saw DeWalt's bra when she lifted her shirt. The record is undisputed that DeWalt pulled her shirt up and back down one time. These two boys then testified that they saw only her underwear and buttocks when she pulled her jeans and underpants down, as she was not facing them. They each testified that they covered their eyes before appellant turned around.

¶ 9 The only Commonwealth witness who actually testified that any of the minors saw Appellant's genitalia was the arresting officer who was not present during the incident, but who inferred from his interviews with the young witnesses that at least one of them saw DeWalt's "vagina". DeWalt contends that his use of the word "vagina", when none of the boys actually used the word in their testimony, was merely an assumption substituted in place of the thirteen-year-old's reference to "pubic" or "private area". Indeed, the officer testified, "[m]ost of us consider [the pubic region] the same, one and the same [as the vagina]". (Trial Transcript, 5/12/99, at 78).

■ ¶ 10 DeWalt argues that the arresting officer's conclusion was an impermissible augmentation of the thirteen-year-old's testimony. She maintains that the thirteen-year-old did not mean that he saw her genitals because he never indicated that he had, and he did not use the word "vagina" in his description to the jury. We agree. The trial court specifically instructed the jury that the medical definition of "genitals" from *Stedman's Medical Dictionary*, 25th Edition (1990) is: "organs relating to reproduction or generation such as the vulva in the female and the penis and scrotum in the male." DeWalt argues, and we agree, that the arresting officer's testimony, based solely on inferences he drew from interviews with the witnesses, was improperly used to enhance the testimony of a child witness. *Commonwealth v. Smith*, 586 A.2d 957, 962 (Pa.Super.1991).

■ ¶ 11 A comparison of the eyewitness testimony with that of the arresting officer reveals that the officer's testimony was crucial to the Commonwealth's case. None of the eyewitnesses testified that they saw DeWalt's "genitals" – vagina, labia or vulva. In fact, the boys' testimony reveals that appellant was standing with her feet together or slightly apart during this entire incident, which lasted approximately five seconds, and she did not bend over, spread or lift her legs. Nonetheless, the arresting officer testified that the thirteen-year-old saw her vagina, thereby improperly supplying a missing element of the indecent exposure statute. We find the evidence of record was insufficient to support a conviction for indecent exposure.

¶ 12 Next, Appellant argues that the evidence adduced at trial was insufficient to prove the charge of corruption of minors because the Commonwealth did not prove that Appellant intentionally, knowingly or recklessly corrupted the minors' morals. The statute states:

Whoever, being the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1).

■ ¶ 13 The statute requires that the knowing, intentional acts of the perpetrator *tend* to have the effect of corrupting the morals of a minor. *Commonwealth v. Todd*, 502 A.2d 631 (Pa.Super.1985).

¶ 14 This court has visited the question of what constitutes "corruption" of a minor's morals before. In *Commonwealth v. Decker*, 698 A.2d 99, 101 (Pa.Super.1997), we held that actions that tended to corrupt the morals of a minor were those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain."

¶ 15 DeWalt was not alone on her back porch. It was Labor Day weekend and she was in the company of two adult males, one of whom the testimony indicated was her husband or boyfriend. A review of the trial transcript reveals the following testimony by the oldest of the three witnesses, the thirteen-year-old boy:

Q When she pulled down her pants, you said her underwear did not come down?

A They did.

Q They did come down?

A Yes.

Q All at once?

A Yes.

Q Okay. And her jeans were around her ankles?

A Yes.

Q Okay. Was she facing you when she did this?

A No.

Q No. She had her back to you?

A Yes.

Q Okay. And then you said Boyd jumped in front of her?

A Yes.

Q Who is Boyd?

A I think her husband. I'm not sure if it's her husband or boyfriend.

Q Okay. When did he jump in front of her?

A After her underwear fell down.

Q After her underwear fell down?

A Yes.

Q She didn't take them down?

A No. When the jeans—when she pulled down her jeans, the jeans pulled down her underwear.

(Trial Transcript, 5/12/99, at 69–70.)

¶ 16 This testimony belies the intentional aspect of the removal of Appellant's underwear.

¶ 17 Finally, DeWalt asserts that the addition of two witnesses at trial constituted an amendment of the information in violation of Rule 229 of the Pennsylvania Rules of Criminal Procedure because it denied her due process and the ability to prepare a defense. Because we reverse on other grounds as detailed above, we need not reach this contention.

¶ 18 While the Court does not condone DeWalt's conduct and recognizes that she exhibited poor judgment, we are satisfied that the evidence was insufficient to sustain convictions beyond a reasonable doubt for the offenses of indecent exposure and corruption of minors. We find that, under the circumstances of this case, the learned trial judge should have granted defense counsel's motion for judgment of acquittal. We therefore reverse and vacate the judgment of sentence. The trial court is directed to enter a judgment of acquittal on both charges.

¶ 19 Reversed and remanded with instructions to enter acquittal.

¶ 20 Jurisdiction relinquished.

¶ 21 Judge DEL SOLE Joins.

¶ 22 Judge TAMILIA Joins and files a Concurring Opinion.

TAMILIA, J., concurring:

¶ 1 I vote to join the majority as I believe it correctly analyzes the evidence and the lack of sufficiency to establish the charges against appellant. I write separately simply to express the view that attempts to delineate exposure on a sexual basis, as does appellant, and the differences that may be required to expose male versus female genitalia may make the statute inoperative and impossible of enforcement. Obviously, the history of this statute, which can be traced back to common law, ecclesiastical law for private indecency and the temporal courts for public indecency was directed historically to male behavior.

¶ 2 Black's Law Dictionary (7th Edition) defines indecent exposure as "An offensive display of one's body in public, esp. of the genitals. Cf. lewdness; obscenity." I do not believe exposure of the genitalia to the extent that they must be seen is an essential element of the crime. If the actor attempts to expose him/herself in public, even if the genitalia are not seen, knowing the conduct is likely to offend, affront or alarm, the elements of the crime are satisfied. The best example is when a man is

urinating alongside a road (which is very common in some cultures). Despite attempts to prosecute for indecent exposure, and the full view of the male genitals by the victim (public), this is not considered to be indecent exposure. *Commonwealth v. Rodriguez*, 296 Pa.Super. 349, 442 A.2d 803 (1982). Also, neither indecent exposure nor its companion offense, open lewdness, 18 Pa.C.S.A. § 5901, requires proof of intent to affront or alarm the general public. *Commonwealth v. Back*, 255 Pa.Super. 603, 389 A.2d 141 (1978) (defendant exposed himself to sisters in a neighboring house from his bedroom window over a period of months when he observed them going to their garage). *Back* held that the exposure need not be in a public place so as to affront or alarm the general public but that it is sufficient to prove appellant's knowledge of the likelihood his conduct caused affront or alarm to others. It is in these cases, similar to those wherein the United States Supreme Court opined that while obscenity cannot be clearly defined one will know it when one sees it, that surrounding factual circumstances become controlling and we must allow broader interpretation of the statute than appears on its face if the statute is to be enforced. At sentencing, the trial judge in *Back* rejected appellant's contention to the effect that nothing more than an intended private indulgence (masturbation) was proved. This Court agreed with the trial judge's statement that "What you were doing was as plain as the nose on your face." *Back, supra* at 143. In other words, as we stated in *Commonwealth v. Decker*, 698 A.2d 99 (Pa.Super.1997), *appeal denied*, 550 Pa. 698, 705 A.2d 1304 (1998):

> In deciding what conduct can be said to corrupt the morals of a minor " '[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate

what particular conduct is rendered criminal by it.' "

*Id.* at 101 (citations omitted).

¶ 3 While the law as to indecent exposure dates back to the Act of 1860, March 31, P.L. 382, § 44, it most recently was amended by the Act of 1995, March 31, P.L. 985, to provide among other things that exposure by *either* a male or female constitutes a crime. Having declared the act equally offensive, whether done by male or female, I do not believe legislative intent should be construed to require actual "viewability" of the genitalia, because exposure which "is likely to cause affront or alarm" is quite possible whether or not the genitalia are actually seen. Since the likely genesis of this activity is rooted in psychosocial behavior, consideration of the psychiatric condition to which the prohibition is directed might be relevant.

¶ 4 The Diagnostic and Statistical Manual of Mental Disorders (4th Edition), published by the American Psychiatric Association, defines Exhibitionism under Sexual Dysfunction Not Otherwise Specified.

### 302.4   Exhibitionism

The paraphiliac focus in Exhibitionism involves the exposure of one's genitals to a stranger. Sometimes the individual masturbates while exposing himself (or while fantasizing exposing himself). If the person acts on these urges, there is generally no attempt at further sexual activity with the stranger. In some cases, the individual is aware of a desire to surprise or shock the observer. In other cases, the individual has the sexually arousing fantasy that the observer will become sexually aroused. The onset usually occurs before age 18 years, although it can begin at a later age. Few arrests are made in the older age groups, which may suggest that the condition becomes less severe after age 40 years.[1]

---

1. American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition. Washington, DC, American Psychiatric Association, 1994.

¶ 5 In criminal cases or juvenile cases where the behavior results in arrest, it usually becomes immediately clear whether such behavior constitutes criminal as opposed to inadvertent non-criminal behavior. In a larger metropolitan area such as Philadelphia or Allegheny County, a first step usually is to refer the actor to a behavior clinic for evaluation, which quickly screens out situational behavior which does not meet the required finding of intending or knowing the behavior would affront or alarm. *Back, supra.* As here, behavior within a circumscribed area perhaps intended to titillate companions who welcomed the activity, while inadvertently exposing the behavior to adolescents who might, under other circumstances, be charged with being "peeping toms", fails to establish the requisite requirement to intend or cause affront or alarm. For the same reasons, the corruption charge would also fail. *See Decker, supra.*

¶ 6 During the 1960s–70s period of protest by thousands of teens and young adults, "mooning" (dropping the trousers to expose the buttocks to the police) was a frequent troubling behavior which affronted the police and much of the public, but it could be likened more to an expression of first amendment rights, to protest within its context. Accommodations to the behavior had to be made if widespread harsh and punitive application of the indecent exposure-lewdness laws was to be avoided. Here, in its context, the indecent exposure and corruption charges appear to be excessive and do not further the ends of justice. I agree that the judgment of sentence should be vacated and the charges dismissed.