J. S06040/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBLETTE BAKER, | : | |
| | : | |
| Appellant | : | No. 1372 EDA 2014 |

Appeal from the Judgment of Sentence April 1, 2014
In the Court of Common Pleas of Bucks County
Criminal Division No(s).: CP-09-CR-0006848-2013

BEFORE: BENDER, P.J.E., LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MAY 4, 2015**

Appellant, Roblette Baker, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas following a jury trial and her convictions for retail theft,[1] conspiracy,[2] corruption of minors,[3] and hindering apprehension or prosecution.[4] Appellant contends the evidence was insufficient to convict her of retail theft, conspiracy, and corruption of

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3929(a)(1).

[2] 18 Pa.C.S. § 903(a).

[3] 18 Pa.C.S. § 6301(a)(1).

[4] 18 Pa.C.S. § 5105(a)(5).

minors. We affirm and grant the Commonwealth's Motion to Correct and/or Modify the Record.

The trial court summarized the facts of this case as follows:

On January 25, 2013, in response to a Richland Township Police alert, Hilltown Township Police Officer John Gildea effectuated a vehicle stop. The alert was related to a retail theft that had just occurred at Walmart in Richland Township, Bucks County, Pennsylvania. The vehicle, a black SUV with chrome wheels, was occupied by Appellant and three males,[5] one of whom was Appellant's [minor son]. Appellant provided Officer Gildea a fictitious name for [him] and a fictitious date of birth (May 8, 1986) [ ]. [Her minor son's] correct date of birth is October 14, 1996.

During the stop, officers observed, in plain view, numerous electronic items including a large screen TV, computers and video games. The Richland Township Police verified with Walmart's Asset Protection Officer that the three males entered the Walmart Store and removed the previously mentioned items without paying for them. Video surveillance in the store recorded the above events between 1:01 a.m. and 1:33 a.m. The total amount of merchandise recovered had a retail value of two thousand five hundred five dollars and twenty eight cents ($2,505.28).

After obtaining a court order for Appellant's cell phone records, it was determined that during the thirty two (32) minutes that the males were in the store, one of them communicated with Appellant three times. Specifically, the cellphone records established that she was on the phone with one of the co-defendants at 1:11 a.m., 1:14 a.m. and 1:23 a.m., the precise time of the retail theft.

The investigative evidence presented at trial also established that . . . the four individuals, including

---

[5] The three males in the vehicle with Appellant were her step-son, Maurkeece Foreman, her minor son, and her brother, Rashi Baker. **See** N.T., 3/20/14, at 5, 6, 14.

> Appellant, were at a Giant grocery store in Hilltown Township, Bucks County, Pennsylvania. . . .

Trial Ct. Op., 7/16/14, at 2-3.

Appellant was sentenced to not less than time served, nor more than twenty-three months' incarceration for retail theft. She received no further penalty for conspiracy. Appellant was sentenced to thirty-six months' probation for corruption of minors to run concurrently with the sentence for retail theft. This timely appeal followed. Appellant filed a court ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> [1]. Whether the evidence was sufficient to prove the Appellant guilty of retail theft beyond a reasonable doubt where the Commonwealth did not prove that Appellant had any involvement in the theft of any items from the Walmart?[6]

> [2]. Whether the evidence was sufficient to prove the Appellant guilty of conspiracy beyond a reasonable doubt where the Commonwealth did not prove that Appellant had any part in an agreement to engage in a theft from the Walmart?

> [3]. Whether the evidence was sufficient to prove the Appellant guilty of corruption of minors beyond a reasonable doubt where the Commonwealth did not prove that Appellant had aided or encouraged [her minor son] to commit a retail theft from Walmart?

---

[6] We note that Appellant did not file post-sentence motions. However, challenges to the sufficiency of the evidence can be raised for the first time on appeal. *See* Pa.R.Crim.P. 606(A)(7).

[4]. Whether the aforesaid issues raised on appeal are waived because Appellant did not provide the notes of testimony to the trial court?

Appellant's Brief at 4.[7]

We will address Appellant's last issue first. The instant certified record did not include the trial transcript.[8] However, Appellant included the notes of testimony from the jury trial in the reproduced record. The Commonwealth requests the record on appeal be corrected to include the notes of testimony from the jury trial held on March 19 and 20, 2014. **See** Commonwealth' Mot. to Correct and/or Modify R., 12/10/14.

We have held that any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. **Commonwealth v. Kennedy**, 868 A.2d 582,

---

[7] In her Rule 1925(b) statement, Appellant also raised the following issue: "The Commonwealth failed to present sufficient evidence to establish that Appellant was guilty beyond a reasonable doubt of 18 Pa.C.S. § 5105(a)(5) as there was no evidence she did anything to hinder the prosecution or conviction of [her minor son]." Appellant's Statement of Matters Complained of on Appeal, 5/21/14, at 2 (unpaginated). This issue was not raised in Appellant's statement of questions presented. Our Supreme Court has stated that it "should disregard as abandoned issues not raised in list of questions presented on appeal." **Eiser v. Brown & Williamson Tobacco Corp.**, 938 A.2d 417, 429 (Pa. 2007). We consider this issue abandoned. **See id.**

[8] We note the trial court suggested the instant appeal be dismissed based upon Appellant's failure to timely provide the transcript of her jury trial. **See** Trial Ct. Op. at 1-2. The trial court addressed the issues on appeal nonetheless. **See id.** at 3-8.

593 (Pa. Super. 2005). Furthermore, "[w]here a review of an appellant's claim may not be made because of such a defect in the record, we may find the issue waived." *Id.* (citation omitted). More recently, however, our Supreme Court held: "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." Pa.R.A.P. 1921 note (citing ***Commonwealth v. Brown***, 52 A.3d 1139, 1145 n.4 (Pa. 2012)). In this case, because the trial transcript is part of the reproduced record and its accuracy is undisputed, we will grant the Commonwealth's motion to correct the record and address Appellant's claims on their merits. ***See id.***

We will address issues one and two together because they are interrelated. Appellant argues the evidence was insufficient to prove beyond a reasonable doubt that she was guilty of retail theft because she lacked "the requisite intent to deprive the merchant of any items." Appellant's Brief at 16. Appellant remained in the vehicle in the parking lot while the males went into the Walmart. *Id.* at 21. Appellant did not assist in unloading the cart or putting the items into the vehicle. *Id.* She was unaware of the fact that Foreman was stealing merchandise until she spoke with him on her cell phone from the vehicle. *Id.*

Appellant argues the Commonwealth failed to present sufficient evidence that she conspired to commit retail theft. *Id.* at 26. Appellant did

not enter the Walmart. *Id.* at 28. There was no evidence that there was an agreement to commit the crime. *Id.* She avers there was no circumstantial evidence to establish an agreement. *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "[O]ur scope of review is plenary and our standard of review is *de novo*."[9] *Commonwealth v. Gerald*, 47 A.3d 858, 859 (Pa. Super. 2012).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. . . .
>
> \*   \*   \*
>
> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-36, 1237 (Pa. 2007) (citations and quotation marks omitted).

---

[9] Appellant avers the trial court erred in stating she "assisted in loading the items into the vehicle' after the theft." Appellant's Brief at 23. Given our scope of review, this is of no moment. *See Gerald*, 47 A.3d at 859. Moreover, as the trial court stated: "Because we do not have the notes of testimony in the instant matter, we are forced to recall what happened at the jury trial from our personal notes and memory." Trial Ct. Op. at 2.

"The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Caban*, 60 A.3d 120, 132 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013).

Section 3929 of the Crimes Code defines retail theft:

> **(a) Offense defined.**—A person is guilty of a retail theft if he:
>
> > (1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof[.]

18 Pa.C.S. § 3929(a)(1).

Section 903 of the Crimes Code defines conspiracy:

> **(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1)-(2).[10]

> [T]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.
>
> ***Commonwealth v. Murphy***, 795 A.2d 1025, 1037-38 (Pa. Super. 2002) (citations and internal quotation marks omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, **a conspiracy may be inferred** where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

---

[10] We note the docket refers to the charge under subsection (c) which provides:

> **(c) Conspiracy with multiple criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only **one conspiracy** so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S. § 903(c) (emphasis added).

> *Commonwealth v. Johnson*, 719 A.2d 778, 784-785 (Pa. Super. 1998) (citations and internal quotation marks omitted).

*Commonwealth v. Knox*, 50 A.3d 732, 740 (Pa. Super. 2012) (emphasis added). Furthermore, "a defendant can be held accountable for the actions of his or her co-conspirators although the **defendant did not specifically intend for the co-conspirators to perform these acts**." *Commonwealth v. Simpson*, 754 A.2d 1264, 1274 (Pa. 2000) (emphasis added).

The following testimony was adduced at trial. Foreman testified that he was with Appellant, her minor son, and Rahshi Baker on the date of the incidents between 12:00 a.m. and 3:00 a.m. N.T., 3/20/14, at 6, 14. He stole some things from Walmart and "put the stuff in the car and went back in and grabbed a couple other things . . . ." *Id.* at 7. Appellant remained in the car. *Id.* at 10. Appellant contacted him on his cell phone and told him she was cold in the car. *Id.* at 11. He "informed her that [he] was stealing." *Id.* He "came out to the car and put the stuff in the car." *Id.* at 10-11. Appellant did not tell him to take the items back. *Id.* at 12. He went back to Walmart to get Appellant's son and "took some more stuff." *Id.* He brought the items back to the car and put them in the trunk. *Id.* at 13. Appellant was still in the car in the front seat. *Id.* Appellant's minor son and her brother came out and they all went to Giant. *Id.* at 14.

After they arrived at Giant, they all got out of the vehicle and went into the store separately. *Id.* at 15. He stole grocery items. *Id.* at 16. A woman from Giant came out of the store. *Id.* Her supervisor or manager came out and said he was calling the police. *Id.* They were about to leave and Appellant came out to the car and sat in the front seat. *Id.* at 17. After they left Giant, they "got pulled over by a bunch of cops." *Id.* at 18.

Officer Gildea testified that the cell phone records show the calls between Foreman and Appellant were at the time they were at the Walmart from approximately 1:00 a.m. until 1:33 a.m. *Id.* at 55. The video from Walmart shows they were at the Walmart at that time. *Id.*

Jennifer DeLuca, an employee at Giant Food Store on the date of the incident, testified at trial. N.T., 3/19/14, at 27. She "saw a gentleman walk out of the door with a full shopping cart worth of merchandise." *Id.* at 29. She stated:

> When I got back to the register, I saw a young man run across the front end of the store towards the produce section and run back with something in his hand. Then when the gentleman walked out with the shopping cart, I ran after him, came back in to call my manager and the police, and I saw three individuals walking out of the store after him.

*Id.* at 30. She positively identified Appellant as one of the three individuals. *Id.* She called the police and gave a description of the vehicle as a black SUV. *Id.* at 31. The store was equipped with video surveillance which is recording all the time. *Id.* at 32. She saw the video surveillance of the

incident she described.[11]   *Id.* at 32.   It accurately depicted what she described.  *Id.*

Richard Tucholski, a patrolman for the Hilltown Township Police Department, testified.  *Id.* at 39.  He "was advised to conduct a traffic stop" on a black SUV.  *Id.* at 44.  Following procedure when making a traffic stop of a vehicle with tinted windows, he had the occupants of the vehicle put the windows down.  *Id.*  He "noticed that there was [sic] three males in the vehicle and a female.  [He] also noticed behind the rear passengers there was a 55-inch Visio—a box for a 55-inch Visio TV and numerous unbagged grocery items."  *Id.* at 45.  He identified Appellant as the female in the vehicle.  *Id.* at 46.

Zachary Herb, a patrolman with the Richland Township Police Department, testified.  *Id.* at 51.  He was dispatched to Giant for a retail theft.  *Id.* at 53.  He saw the video surveillance showing "several African Americans going through the store selecting merchandise, putting it in the cart, and then ultimately pushing that cart out of the store, entering their SUV and leaving without paying—."  *Id.* at 55.  He received a report of a traffic stop and went to the location of the SUV.  *Id.* at 57.  He determined that the individuals in the SUV were involved in the incident at Giant.  *Id.* at 58.  He identified Appellant as being involved in the incident.  *Id.* at 59.  He

---

[11] The video was played for the jury.  *Id.* at 33.

saw unbagged groceries, "a 55-inch video [sic] TV, an HP computer, a Gateway computer, and there were other items scattered all throughout the back of the vehicle . . . ." *Id.* at 59-60.

Brad Antalosky, a Walmart employee, testified. *Id.* at 88. On the date of the incident he was the asset protection associate. *Id.* Walmart has a "closed circuit television system, which is connected to a DVR, digital video recorder, which is running 24 hours a day, seven days a week . . . ." *Id.* at 91. There are 230 cameras in the store. *Id.* He watched the video from the time the three males involved in this incident entered the Walmart parking lot. *Id.* at 94. They walked into the door that was the direct route to the electronics department. *Id.* at 98. He described the items that were taken from the store based upon the video. *Id.* at 101. He was able to identify the merchandise that Officer Gildea showed him by the shipping labels which indicated that the items came from this Walmart. *Id.* at 102. The total amount for the stolen items was determined to be $2,505. *Id.* at 105. All three males placed items in the shopping cart. *Id.* at 112.

Appellant's arguments that the Commonwealth failed to prove that she was guilty of retail theft or conspiracy to commit retail theft from Walmart based upon the fact that she did not "physically take, remove, or conceal any Walmart merchandise" is unavailing. Viewing the evidence in the light most favorable to the Commonwealth, a conspiracy can be inferred from the overt acts of her co-conspirators. *See Knox*, 50 A.3d at 740. It is

undisputed that items were taken from Walmart. Appellant had several phone calls with Foreman and knew he was stealing items from Walmart. Appellant was in the car with the stolen items and accompanied her co-conspirators to the Giant Food Store. Appellant can be guilty of conspiracy to commit retail theft even if she did not specifically intend for the co-conspirators to steal the items from Walmart. **See Simpson**, 754 A.2d at 1274. Appellant need not commit an overt act. **See Knox**, 50 A.3d at 740.

We find Appellant is accountable for the actions of her co-conspirators, namely, retail theft. **See id.**; **Simpson**, 754 A.2d at 1274. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find the evidence was sufficient to convict Appellant of conspiracy and retail theft. **See** 18 Pa.C.S. §§ 903(c), 3929(a)(1); **Ratsamy**, 934 A.2d at 1237; **Caban**, 60 A.3d at 132; **Knox**, 50 A.3d at 740; **Simpson**, 754 A.2d at 1274.

Lastly, Appellant contends the evidence was insufficient to prove she was guilty of corruption of minors because the Commonwealth did not prove that she aided or encouraged her minor son to commit retail theft. She avers the statute requires "an **act** that corrupts or tends to corrupt a minor into committing a crime."[12] Appellant's Brief at 32 (emphasis supplied).

---

[12] We note that Appellant's only citation to legal authority is to the statute. The Pennsylvania Supreme Court has stated:

Appellant contends that because she "did not commit any actions that corrupted or tended to corrupt [her minor son] the verdict must be reversed." *Id.*

Section 6301 of the Crimes Code defines corruption of minors:

**(a) Offense defined.**—

(1)(i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts **or** tends to corrupt the morals of any minor less than 18 years of age, **or** who aids, abets, entices **or** encourages any such minor in the commission of any crime, **or** who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S. § 6301(a)(1)(i) (emphases added).

Our Supreme Court has explained:

The Commonwealth need not prove that the minor's morals were actually corrupted. Rather, a conviction for corrupting morals will be upheld where the conduct of the defendant tends to corrupt the minor's morals. The statute speaks to conduct toward a child **in an unlimited variety of ways** which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct.

---

[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of this Court, even in a capital case, to formulate Appellant's arguments for him.

*Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (citations omitted). Because our review is not hampered, we decline to find the issue waived.

> ***Commonwealth v. Mumma***, [ ] 414 A.2d 1026, 1030
> ([Pa.] 1980) (citations and quotation marks omitted)
> (emphasis added).

> Similarly, this Court has explained that:

> The statute requires that the knowing, intentional
> acts of the perpetrator **tend** to have the effect of
> corrupting the morals of a minor.

> This court has visited the question of what
> constitutes "corruption" of a minor's morals before.
> In ***Commonwealth v. Decker***, 698 A.2d 99, 101
> (Pa. Super. 1997) [ ], we held that actions that
> tended to corrupt the morals of a minor were those
> that "would offend the common sense of the
> community and the sense of decency, propriety and
> morality which most people entertain."

> ***Commonwealth v. DeWalt***, 752 A.2d 915, 918 (Pa.
> Super. 2000) (emphasis in original, one citation omitted).

> \* \* \*

> Corruption of a minor can involve conduct towards a
> child in an unlimited number of ways. The purpose
> of such statutes is basically protective in nature.
> These statutes are designed to cover a broad range
> of conduct in order to safeguard the welfare and
> security of our children. Because of the diverse
> types of conduct that must be proscribed, such
> statutes must be drawn broadly. It would be
> impossible to enumerate every particular act against
> which our children need be protected.

***Commonwealth v. Slocum***, 86 A.3d 272, 277-78 (Pa. Super. 2014) (some

citations and footnote omitted) (emphasis supplied).

In order to find sufficient evidence of corruption of minors, an overt

act is not required. **See** 18 Pa.C.S. § 6301(a)(1)(i). It is sufficient if the

"conduct of the defendant tends to corrupt the minor's morals." *See*

*Slocum*, 86 A.3d at 277. Appellant knew that her minor son was in

Walmart while items were being stolen and accompanied him in Giant.

Appellant's actions "would offend the common sense of the community and

the sense of decency, propriety and morality which most people entertain."

*See id.* Viewing the evidence in the light most favorable to the

Commonwealth, we find the evidence sufficient for the jury to convict

Appellant of corruption of minors. *See* 18 Pa.C.S. § 6301(a)(1)(i);

*Ratsamy*, 934 A.2d at 1237; *Slocum*, 86 A.3d at 277-78.

Judgment of sentence affirmed. Commonwealth's Mot. to Correct

and/or Modify R. granted.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2015