J-S18006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OSCAR CABAN, | |
| Appellant | No. 1208 MDA 2015 |

Appeal from the Judgment of Sentence June 17, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000675-2014

BEFORE:  BOWES, LAZARUS AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 04, 2016**

Oscar Caban appeals from the judgment of sentence of six to twenty-three months imprisonment, a concurrent two year probationary term, and a consecutive year of probation. The sentence was imposed after a jury convicted Appellant of two counts of indecent assault and one count of corruption of a minor.  We affirm.

E.F., the victim, called Appellant Cocoa.[1]  N.T. Trial, 12/1-3/14, at 43. Appellant was the step-grandfather of the victim's twin half-brothers.  E.F.,

---

[1] E.F.'s nickname for Appellant is spelled as Cocoa in the trial transcript and Coco in the transcript of a competency hearing and affidavit of probable cause for Appellant's arrest.  We will utilize the spelling that appeared in the trial transcript.

* Retired Senior Judge assigned to the Superior Court.

who was eight years old at the time of trial, told the jury that, when she was being babysat by Appellant and his wife, Shirley, Appellant "touched bad body parts of mine" while they were in the computer room. *Id*. at 45. E.F. said that she and Appellant were alone in that room with the door slightly ajar and were playing a game on the computer when the conduct occurred. E.F. delineated that, by bad body parts, she meant "[w]here you go to the bathroom" as well as your "chest" and your "butt." *Id*. at 47, 54.

The victim reported that she was wearing a shirt and leggings at the time and then delineated that Appellant, "put his hand up my shirt and touched my body part," and that he also touched "[w]here I go to the bathroom" by placing his hand underneath her leggings. *Id*. at 48, 54. The girl specified that Appellant was touching her skin and moved his hand "down and touched" where she urinates. *Id*. 55. Appellant then rubbed her stomach. When Shirley indicated lunch was ready, Appellant ceased his actions. The abuse occurred for fifteen to twenty minutes. The victim was angry, disgusted, and scared by Appellant's activities.

Although E.F. could not remember when the incident occurred, J.W., E.F.'s mother, explained that it was around August 6, 2013, when E.F. was six years old. J.W. testified to the following. Appellant and his wife Shirley babysat E.F. and J.W.'s twin sons while J.W. was at work. In August 2013, J.W. was separated from E.F.'s father. E.F. had been at Appellant's house on a Thursday, and then went to her father's house for his period of

custodial visitation. The following Tuesday night, before E.F. was due to return to Appellant's house to be babysat, E.F. told J.W. "she was uncomfortable returning to [Appellant and Shirley's] home to be baby-sat while I worked." *Id*. at 95-96. J.W. again told her daughter that they would discuss it in the morning. J.W. said that E.F. then "woke up in the middle of the night and again told me that she did not want to go back there." *Id*. at 97. J.W. said that they would talk about it in the morning. J.W. testified that, when E.F. "woke up the next morning, she again told me that she did not want to go there. And at this time with her persistence, I thought it was very abnormal, so I asked her why." *Id*. at 98.

E.F. responded, "Cocoa had touched her stomach." *Id*. When J.W. asked E.F. what she meant, E.F. said that she was embarrassed to talk about it. J.W. informed her daughter, "[Y]ou don't have anything to be embarrassed about. It's just you and mommy here, and you can talk to mommy about anything." *Id*. at 98-99. Then, E.F. "leaned back on the couch, and she took her hand and put it down her pants and touched her vagina and said he went like this." *Id*. at 99.

J.W. contacted the Pennsylvania ChildLine and scheduled an appointment for E.F. with the Pinnacle Health Children's Resource Center in Harrisburg. Megan Leader, who had specialized training in questioning child abuse victims, interviewed E.F. on August 13, 2013. The tape of that interview was played to the jury. While the transcript of the interview is not

contained in the certified record, the affidavit of probable cause for Appellant's arrest indicates that E.F. "freely spoke and communicated in a clear and understandable voice." Affidavit of Probable Cause, 1/23/14, at 1. When asked "what has happened," E.F. responded that Cocoa touched "my privates." *Id*. E.F. additionally related that "she had her clothes on but Coco[a]'s bare skin touched her vagina underneath her clothes. She also advised Cocoa "touched her buttocks one time and he touched her breast" by moving his "hand in a circular motion." *Id*. E.F. was shown an anatomical drawing and "was able to accurately identify her private parts as her vaginal area, buttocks, and breasts." *Id*. E.F. also told Ms. Leader that "when Coco[a] touched her that she felt scared. She also related when he touched her privates it felt weird." *Id*.

Pennsylvania State Trooper Steven Nesbit, a member of the criminal investigation unit[2] of the Troop H Carlisle Barracks, also testified on behalf of the Commonwealth. He was contacted by Children and Youth Services about E.F.'s allegations, and he met with E.F. and her parents as well as members of the Pinnacle Health Children's Resource Center. He was present when the August 13, 2013 interview was conducted, and went to meet with

---

[2] A criminal investigator with the Pennsylvania State Police has specialized investigative training and is the equivalent of a detective.

Appellant to discuss the accusations leveled by E.F. Appellant and Shirley allowed him into their home, where there was a computer room.

Appellant agreed to speak with Trooper Nesbit about E.F. Trooper Nesbit informed Appellant that E.F. had accused Appellant of touching her and Appellant "immediately said, well then, I could have accidentally touched her." *Id*. at 131. Appellant explained that he held the children in his lap while they were on the computer and that he could have accidently touched her chest while E.F. was falling off his lap. Appellant repeatedly denied placing his hand on E.F.'s vagina but admitted to being alone in the computer room with her.

Based upon this evidence, the jury convicted Appellant of unlawful contact with a minor under age sixteen with the perpetrator more than four years older, two counts of indecent assault, and corruption of a minor. The case proceeded to sentencing on April 7, 2015, when Appellant was given an aggregate sentence of ten to twenty-three months imprisonment on the unlawful contact offense, a concurrent term of six to twelve months in jail on one count of indecent assault, a concurrent two years of probation on the other indecent contact offense, and one year of probation on the corruption-of-a-minor charge that was imposed consecutively to the other sentences. Thereafter, Appellant filed a post-sentence motion, and the trial court accorded Appellant partial relief. Specifically, the trial court granted a judgment of acquittal as to the offense of unlawful contact and vacated the

sentence imposed thereon, which reduced Appellant's jail term to six to twenty-three months. This appeal followed. Appellant raises five issues for our review.

> A. Whether the evidence in this matter was sufficient to sustain the verdict.
>
> B. Whether the Trial Court committed an error of law and fact when it failed to grant [Appellant's] request for judgment of acquittal even though the evidence was insufficient for a finder-of-fact to have concluded that [Appellant] committed the alleged crimes.
>
> C. Whether the Trial Court abused its discretion when it failed to grant [Appellant's] judgment of acquittal even though the adjudication was against the weight of the evidence.
>
> D. Whether the Trial Court, by Order of the Honorable Edward E. Guido, committed an error of law and fact when it determined E.F. to be competent to testify at trial.
>
> E. Whether the Trial Court, by Order of the Honorable Edward E. Guido, committed reversible error when it failed to permit trial counsel, over the Commonwealth's objection as to relevancy, to question E.F. regarding E.F.'s ability to perceive, remember, and appropriately communicate regarding the events in question.

Appellant's brief at 7. While this statement indicates that five issues are raised, in the body of his brief, Appellant advances only three. He combines argument on questions A and B as well as on issues D and E. *See* Appellant's brief at 14-17, 20-25. Hence, we will address Appellant' first and second claims together, both of which challenge the sufficiency of the evidence supporting his convictions, and we utilize the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in

the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Best***, 120 A.3d 329, 341 (Pa.Super. 2015) (citation omitted).

Appellant was convicted of indecent assault pursuant to 18 Pa.C.S. § 3126(a)(7) and (8):

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

. . . .

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

- 7 -

18 Pa.C.S. § 3126(a)(7), (8). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Corruption of a minor occurs whenever a person, "being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age[.]" 18 Pa.C.S. § 6301(a)(1) "Actions that tend to corrupt the morals of a minor are those that 'would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain.'" *Commonwealth v. Snyder*, 870 A.2d 336, 351 (Pa.Super. 2005) (partially quoting *Commonwealth v. DeWalt*, 752 A.2d 915, 918 (Pa.Super. 2000)).

Herein, the evidence established that the victim was six when Appellant, who was approximately sixty years old, touched the victim's vagina and breasts for about fifteen minutes while they were playing a computer game. Given the nature of the conduct, it could serve no purpose other than sexual arousal. Hence, that evidence was sufficient to sustain the convictions for indecent assault. Touching the vagina and rubbing the breasts of a six-year-old child offends the common sense of the community and the sense of decency and morality that most people entertain. We therefore conclude that the evidence also sufficiently supported the offense of corruption of a minor.

Appellant's first challenge to the sufficiency of the evidence supporting his convictions is that "E.F.'s testimony was so contradictory and ambiguous that the jury's decision could only have been based on conjecture or speculation." Appellant's brief at 15. He points to some inconsistencies in her testimony. For example, E.F. stated that she was never alone in the computer room with Appellant but then reported that, when the abuse occurred, she was with Appellant in the computer room while the door was ajar and Shirley was in the other room. The victim also was unsure about whether the incident occurred while she was sitting next to Appellant in a chair or on his lap. Additionally, the victim could not remember precisely when the abuse occurred given the lapse of two years.

It is well-established that, "The finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence." *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011); *see also Commonwealth v. Haney*, 2015 WL 9485187, at *8 (Pa. 2015) (rejecting defendant's position that a witness was not credible by observing that the "jury was free to find this evidence credible"); *Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) ("A determination of credibility lies solely within the province of the factfinder."); *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa.Super. 2006) ("It is not for this Court to overturn the credibility determinations of the fact-finder."). Our Supreme Court has further articulated, on numerous

occasions, that: "Issues of witness credibility include questions of inconsistent testimony[.]" *E.g. Sanchez*, *supra* at 39.

Herein, E.F. testified at trial about the abuse in an articulate manner. The critical aspects of the trial testimony were consistent with what she told her mother soon after the incident occurred. A week later, E.F. reported the events to Ms. Leader, also in conformity with her trial testimony. Appellant relies upon minor inconsistencies and a memory lapse on the part of a very small child as to when the abuse occurred. However, E.F. was not inconsistent about the essential facts that supported the convictions in question. Appellant touched her vagina and breasts. We do not view her testimony as so inherently contradictory and unreliable that Appellant's convictions cannot stand. Indeed, Appellant heavily relies upon a Supreme Court decision wherein the Court stated, "While it is true that [the witness's] various statements contained contradictions and some inconsistencies, we do not conclude that her testimony was so inherently unreliable as to justify a finding that a verdict based upon it must as a matter of law be set aside." *Commonwealth v. Smith*, 467 A.2d 1120, 1122 (Pa. 1983). No relief is due.

Appellant also suggests that the evidence was insufficient to establish that his actions were undertaken for purposes of arousing or gratifying his sexual desire. Appellant's brief at 17 ("[T]he record is completely devoid of any evidence that [Appellant] had contact with E.F. 'for the purpose of

arousing sexual desire in the person or the complainant.'"). We disagree. We have held that, when the actions undertaken by the defendant do "not occur outside of the context of a sexual or intimate situation," then the fact-finder is free to conclude that the contact was "done for the purpose of arousing or gratifying [the defendant's] sexual desire." **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006). Rubbing a female's breasts and touching her vagina does not occur outside of the context of a sexual situation. Hence, the proof adduced at trial was sufficient to support the jury's determination that Appellant's actions were undertaken for the purpose of arousing his sexual desire.

Appellant's next position is that the trial court committed an abuse of discretion when it rejected his weight-of-the-evidence claim. When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. **Commonwealth v. Leatherby**, 116 A.3d 73 (Pa.Super. 2015). This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. **Id**. Simply put, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id**. at 82. A new trial is warranted in this context only when the verdict is "so contrary to the evidence that it shocks one's sense of justice

- 11 -

and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Commonwealth v. Morales**, 91 A.3d 80, 91 (Pa. 2014).

In connection with this issue, Appellant again assails E.F.'s credibility and does so on the same grounds as articulated in his sufficiency position. However, as set forth *supra*, E.F.'s credibility was solely for the jury to assess. E.F. was cross-examined on the inconsistencies now relied upon by Appellant, and it is simply not our function to overturn the jury's determination. For the same reasons outlined above, we cannot conclude that the trial court abused its discretion in rejecting Appellant's weight claim.

The third averment presented on appeal is two-fold. Appellant claims both that the trial court should not have determined that E.F. was competent to testify and that it committed reversible error when it did not allow Appellant to delve, on cross examination of E.F., into whether there was taint, or into the details of the incident.

We have noted, "It is well-settled that the determination of whether a child is competent to testify is within the sound discretion of the trial court, and an appellate court should not interfere with the lower court's ruling absent a manifest abuse of discretion." **Commonwealth v. Hunzer**, 868 A.2d 498, 507 (Pa.Super. 2005). When a trial court is determining whether a child witness is competent to testify, it must take into consideration the following principles:

Competency of a witness is presumed, and the burden falls on the objecting party to demonstrate incompetency. When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency. In making its determination, the court must inquire whether the child possesses: (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Id*. (quoting *Commonwealth v. D.J.A.,* 800 A.2d 965, 969 (Pa.Super. 2002)).

Our review of the transcript of competency hearing establishes that E.F. was articulate in her communications, understood all questions posed of her, and answered them appropriately and intelligently. She was able to relate where she went to school, the precise date of when she was going to be starting third grade, and the last names of her upcoming teacher as well as her last two teachers. She told the presiding judge she was not married and that she thought her first and third grade teachers were nice while her second grade teacher was not nice.

The court also questioned E.F.'s capacity to observe and recall the occurrence itself. She knew she was present at the proceeding "[b]ecause Coco[a] did something bad" and that Cocoa was her brothers' grandfather. *Id*. at 4. She correctly told the judge that the first person she told "about what happened with Coco[a]" was her "mom." N.T. Competency Hearing,

- 13 -

8/19/14, at 9. The girl informed the court that after she told her mom, she stopped going to Appellant's house and went to "Melissa's." *Id*. When the trial court asked if Melissa was a counselor, E.F. insightfully responded, "Well -- I think she's a therapist." *Id*. at 10. Appellant was allowed to cross-examine E.F. about her ability to recall the events that transpired after she reported the abuse to her mother. However, the trial court would not permit him to engage in extensive questioning about the actual events since the proceeding was to determine the victim's competency. The court reasoned that Appellant already had the benefit of a preliminary hearing and "the opportunity to question her about these [events] at that point in time." *Id*. at 13.

Finally, the trial court ascertained the victim's ability to distinguish between fact and fiction and her duty to speak the truth. In this respect, E.F. articulated that it was "[g]ood to tell the truth, "[bad] to tell a lie," and "[y]ou'll get in trouble" if you lie. *Id*. at 5. The court asked E.F., "If I told you that my shirt was white, would that be the truth or a lie?," and she responded, "Lie." *Id*. It then inquired why that statement was a lie, and E.F. said, "Because your shirt isn't white," as it was blue. *Id*. Next, she was asked "If I told you my ears were really, really small, would that be the truth or a lie?," and she answered, "A lie" since "they're not small. They're big." *Id*. Appellant was permitted to cross-examine E.F. about her awareness of her duty to tell the truth. *Id*. at 6-7. E.F. repeated that it was good to tell

the truth and bad to tell a lie and that she would probably get into trouble if she lied in court. Thus, our review of the proceeding establishes that E.F. satisfied all three aspects of the competency determination, and the trial court's ruling on the question was not an abuse of discretion.

Appellant also complains about the curtailment in his questioning of E.F. about the specifics of the abuse. This issue concerns the trial court's ruling on the scope of cross-examination. "The scope and the manner of cross-examination are within the sound discretion of the trial court and will not be overturned unless the court has abused that discretion." *Commonwealth v. Nunn*, 947 A.2d 756, 761 (Pa.Super. 2008) (quoting *Commonwealth v. Eichinger*, 915 A.2d 1122, 1143 (Pa. 2007)).

In this case, Appellant sought to question the victim about the specifics of what occurred on the day of the incident in question. A competency hearing's purpose is, in pertinent part, to ascertain a victim's capacity to observe and remember the event, which Appellant was permitted to explore. Our Supreme Court noted in *Commonwealth v. Delbridge*, 855 A.2d 27 (Pa. 2003), that a competency hearing is not a means of discovery for the defendant. It ruled specifically in that decision that cross-examination at a competency hearing "on the details of the events at issue" is permitted only if there is some proof that the witness has "no recall of the event in question, or the witness's ability to recall the event has been corrupted." *Id*. at 45. E.F. evidenced an uncorrupted ability to recall the

event, and the trial court herein did not abuse its discretion in refusing to allow the proposed questioning about the details of the indecent contact.

Appellant also suggests that he was improperly prohibited from questioning E.F. about taint. Taint is defined as "the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child." *Id*. at 35. "The core belief underlying the theory of taint is that a child's memory is peculiarly susceptible to suggestibility so that when called to testify a child may have difficulty distinguishing fact from fantasy." *Id*. at 34-35.

The ***Delbridge*** Court indicated that the defendant carries the initial burden of proving taint, emphasizing that, "In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint" by clear and convincing evidence. *Id*. at 40. A non-exhaustive list of factors that can be used to assess whether taint exists include the victim's age, the circumstances of the questioning, the child's relationship with the interrogator, and the types of questions that were asked. Our Supreme Court ruled examination on taint at a competency hearing becomes "necessary in those cases where there is some evidence that improper interview techniques, suggestive questioning, vilification of the accused and interviewer bias may have influenced a child

witness to such a degree that the proffered testimony may be irreparably compromised." *Id*. at 39.

In *Delbridge*, the defendant, at a competency hearing, sought to explore the possibility that his estranged wife and police, through suggestion and improper questioning, had implanted the memories of abuse allegations leveled against him by his children. Despite having significant proof of the possibility of taint, the trial court precluded any questioning of the children on the subject. Our Supreme Court reversed, concluding that the defendant should have been permitted to ascertain whether taint was present.

In this case, there was not a scintilla of proof that E.F.'s testimony was tainted. She was six years old when the contact occurred and old enough to appreciate the nature of the actions by displaying appropriate reactions to them. She said that the incident made her angry, disgusted, and afraid. There was no indication of the existence of animosity towards Appellant by E.F. or her parents, and no motive to implant false memories in her. No one was vilifying Appellant.

E.F. volunteered to her mother that she did not want to go to Appellant's house, was asked why, and was hesitant to explain. J.W. did not encourage E.F. to accuse anyone of abuse; she merely told her daughter that she could be frank with her about anything. E.F. then mimed what Appellant had done to her. At a child resource center, E.F. was questioned by a neutral specialist. Neither Appellant nor E.F. had a relationship with

Ms. Leader, who was trained in how to examine a child abuse victim. Appellant produced no proof at the competency hearing that Ms. Leader's inquiries were leading or suggestive. As Appellant adduced no evidence of taint, his questioning on that subject properly was restricted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2016