**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Joseph T. SMITH, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 27, 2004.

Filed Dec. 7, 2004.

Joseph R. Viola, Philadelphia, for appellant.

A. Sheldon Kovach, Asst. Dist. Atty., Media, for Com., appellee.

Before: DEL SOLE, P.J.; GANTMAN and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Appellant, Joseph T. Smith, appeals the judgment of sentence entered on March 17, 2004, following a bench trial finding him guilty of criminal attempt to commit aggravated indecent assault,[1] sexual assault,[2] indecent assault[3] (seven counts), and corruption of minors[4] (two counts). Appellant was sentenced to an aggregate term of incarceration of 117 months to 336 months. No post-sentence motions were filed by appellant, and this direct appeal follows. We affirm.

¶ 2 The relevant factual history, as adduced at trial, is as follows. On October 1, 2002, the Lansdowne Borough Police Department arrested appellant for incidents that occurred between December 2001 and March 2002. Warrant of Arrest, 10/1/02. At that time, appellant's father was the pastor of the Gates of Heaven Church in Philadelphia. N.T. 11/5/03, at 54. Appellant, who served as Minister of Music, met N.A., age twelve, and P.C., age sixteen, the two victims, through this church. Id. at 56. P.C. and N.A. are aunt and niece, and they and their entire families were deeply involved in the church. Id. at 54, 131–132; N.T. 11/6/03, at 17–18, 45.

¶ 3 Appellant became engaged in November 2001 to P.C.'s older sister, Debra, who was pregnant by appellant. N.T. 11/6/03, at 23. As a result of these relationships, appellant spent many hours each day with the victims, either at the storefront church or at the Lansdowne home where P.C. lived with her sister Debra and her mother. N.T. 11/5/03, at 58, 127. Beginning in November 2001, appellant slept at the Lansdowne home about five nights a week. N.T. 11/6/03, at 14.

¶ 4 In December 2001, while at the Gates of Heaven Church, P.C. confided in appellant that she was struggling with her sexual identity and having homosexual feelings. N.T. 11/5/03, at 142–143. Later that day, after falling asleep while watching a video with appellant, P.C. testified she awoke feeling appellant on top of her, penetrating her. Id. at 147. Appellant told her that if she told anyone, he would tell her mother about her relationship with another girl. Id. at 149. P.C. testified that she felt ashamed and mad, and she did not want her mother, who disapproved of such conduct, to learn about her homosexual relationship. Id. at 150.

¶ 5 After December 2001, appellant proceeded, on different occasions, to take hold of P.C. by her face and hair and fondle her breasts, vagina, and other body parts. Id. at 134–160. Throughout this period, appellant would whisper "nasty things" in

---

1. 18 Pa.C.S.A. § 901; 18 Pa.C.S.A. § 3125.

2. 18 Pa.C.S.A. § 3124.1.

3. 18 Pa.C.S.A. § 3126.

4. 18 Pa.C.S.A. § 6301

her ear, call her a "slut" and a "tramp", and tell her "I could have you whenever I want you." *Id.* at 152. P.C. testified that she wanted to get someone to help but felt constrained, since she feared appellant would reveal her homosexual relationship to her family. *Id.* at 158.

¶ 6 In February 2002, appellant was at the Lansdowne home with N.A. and P.C.[5] N.A. testified that appellant grabbed her by the hair, put his hand over her mouth, and guided her to the corner of the dining room, where he held her with her face to the wall. *Id.* at 62–64, 73, 117–118. Appellant then removed his hand from her mouth, and while pulling her hair, he placed his hand under her pants and underwear at the top of her vagina. *Id.* at 64–69. N.A. testified appellant moved his finger further, but she crossed her legs and called to her aunt for help. *Id.* at 67–69.

¶ 7 In March 2002, appellant drove P.C. to a secluded area of a park, where he lifted P.C.'s shirt, unzipped his pants, kissed and sucked her breasts, performed oral sex, and penetrated her with his penis. *Id.* at 163–168. P.C. testified to feeling mad that appellant was using her homosexual relationship in order to do things she did not want him to do. *Id.* at 168.

¶ 8 Finally, P.C. revealed her homosexual relationship to her mother and told appellant not to touch her again. *Id.* at 223, 247, 257. Thereafter, P.C. told N.A. about appellant's conduct, N.A. revealed appellant's conduct with her, and the rest of the family was then informed regarding the incidents and actions involving appellant. *Id.* at 83, 95, 122, 169–170, 175–181, 186. The police were contacted and appellant was ultimately arrested. *Id.* at 188. DNA testing revealed appellant to be the father of Baby Boy M., a child born to P.C. after March 2002. *Id.* at 18–20.

¶ 9 Appellant challenges the sufficiency of the evidence for his convictions of criminal attempt to commit aggravated indecent assault (from the incident with N.A. in February 2002), sexual assault (from the incident with P.C. in March 2002), indecent assault (from the incidents beginning in December 2001), and corruption of minors (from his contact with P.C. and N.A.). Appellant also challenges his sentence as illegal and excessive. And, appellant challenges the sentencing guidelines of Pennsylvania as unconstitutional under the United States Supreme Court's recent decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[6]

¶ 10 Appellant first challenges the sufficiency of the evidence for his convictions.[7] The standard of review for sufficiency of the evidence claims is well settled:

the standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find

---

5. N.A., in one statement of her testimony, recalled the incident to have occurred in February 2000. After reviewing the record, including the portion of the testimony in which N.A. stated she was twelve at the time of the incident, it is clear February 2002 was the correct date of the incident.

6. We note another panel of this Court has recently addressed a somewhat similar issue in *Commonwealth v. Bromley,* 2004 WL 2418029 (Pa.Super.2004).

7. The Commonwealth asserts that these challenges are waived as improper challenges to the weight of the evidence. Though appellant argues there is no evidence for the charges, his issues are sufficiently formulated as challenges to the sufficiency of the evidence and we will therefore address the merits of these sufficiency claims.

every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof [of] proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman,* 820 A.2d 766, 772 (Pa.Super.2003) (citations omitted).

¶ 11 To support a charge of criminal attempt, the Commonwealth must prove that appellant intended to commit the crime and took a substantial step toward the commission of the crime. 18 Pa.C.S.A. § 901. To support a charge of criminal attempt to commit aggravated indecent assault, the Commonwealth must prove appellant attempted to "engage in penetration, however slight, of the genitals or anus of a complainant with a part of the [appellant's] body for any purpose other than good faith medical, hygienic or law enforcement procedures, if done so without the complainant's consent, or the complainant is less than 13 years of age." 18 Pa.C.S.A. § 3125(a)(1),(7).

¶ 12 Appellant claims that the evidence relating to the incident involving N.A. in February 2002 was insufficient to prove the charge beyond a reasonable doubt. Appellant states that "it is inherently [im]plausible and contrary to the human experience that such an incident could have occurred." Appellant's Brief, at 33. Appellant's claim is meritless.

¶ 13 Testimony revealed that appellant grasped the victim, twelve years old at the time, by the hair, covered her mouth, took her to the corner of a room, and put his fingers on the skin above her vagina, only stopping when she crossed her legs and called for the attention of her aunt. Viewing all this evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the fact-finder to conclude appellant committed the charged attempt to commit aggravated indecent assault.

¶ 14 To support a charge of sexual assault, the Commonwealth must prove that appellant "engaged in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. Resistance to sexual assault is not required to sustain a conviction. 18 Pa.C.S.A. § 3107; *Commonwealth v. Pasley,* 743 A.2d 521 (Pa.Super.1999) (noting the crime of sexual assault is intended to fill the loophole left by the rape and involuntary deviate sexual intercourse statutes by criminalizing nonconsensual sex where the perpetrator employs little if no force).

¶ 15 Appellant claims the evidence relating to the incident involving P.C. in March 2002 was insufficient to prove the charge beyond a reasonable doubt. Appellant states that "there was simply no credible evidence of record to support the Commonwealth's theory that [appellant] engaged in sexual intercourse with his purported victim without her consent, if in fact the incident occurred at all." Appel-

lant's Brief, at 34. Appellant's claim is meritless.

¶ 16 The evidence revealed appellant first assaulted P.C. in December 2001 and threatened to reveal her homosexual relationship to her mother if she did not do as he said. When taken to the park by appellant in March 2002 for sexual intercourse, P.C. did not respond with physical resistance because, as she stated, "it was not something she wanted, but there was nothing that she could do to stop it." N.T. 11/5/03, at 166, 168. Viewing all this evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the fact-finder to conclude appellant committed the charged sexual assault.

¶ 17 To support a charge of indecent assault, the Commonwealth must prove appellant "had indecent contact with the complainant or caused the complainant to have indecent contact with [appellant] without complainant's consent." 18 Pa. C.S.A. § 3126(a)(1).

¶ 18 Appellant engaged in an established pattern of physical and mental intimidation of P.C. exclusively for the purpose of sexual gratification. Appellant groped and fondled the intimate parts of the victim's body and continually addressed her with sexual innuendo and with threats. Viewing all this evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the fact-finder to conclude appellant committed the charged indecent assaults.

¶ 19 To support a charge of corruption of minors, the Commonwealth must prove that appellant, "being of the age of 18 years and upwards, by any act corrupted ... the morals of any minor less than 18 years of age." 18 Pa.C.S.A. § 6301(a)(1). Any actions that "would offend the common sense of the community and the sense of decency, propriety, and morality which most people entertain, are actions that tend to corrupt the morals of a minor." *Commonwealth v. DeWalt,* 752 A.2d 915, 918 (Pa.Super.2000).

¶ 20 Appellant consistently had inappropriate sexual contact with the two underage victims, both of whom were relatives of his pregnant fiancée. Both victims were affected sexually and spiritually, and P.C. thereafter became pregnant by appellant. N.T. 11/5/03, at 18–20. Viewing all this evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the fact-finder to conclude appellant committed the charged corrupting the morals of a minor.

¶ 21 Next, appellant challenges his sentence as illegal and excessive.[8] The standard of review in sentencing matters is well settled: "imposition of sentence is vested in the discretion of the sentencing court and will not be disturbed by an appellate court absent a manifest abuse of discretion." *Commonwealth v. Griffin,* 804 A.2d 1, 7 (Pa.Super.2002). A claim that the sentence imposed by the trial court was manifestly excessive is a challenge to the discretionary aspects of sentence. *Commonwealth v. Petaccio,* 764 A.2d 582, 586 (Pa.Super.2000). Where an excessiveness claim is based on a sentence

8. Appellant's "concise" statement of matters complained of on appeal consists of, on the sentencing issue alone, seventeen paragraphs over four pages. Appellant's brief, however, focuses on the sentence for sexual assault. Additionally, the Commonwealth asserts that this challenge is waived for failure to comply with Pa.R.A.P. 2119(f). Though not clearly labeled in appellant's brief, his Rule 2119(f) statement is included therein. Additionally, appellant, as required, raises a substantial question for review by noting where in the guidelines appellant's sentence falls, which sentencing code provision is at issue, what fundamental norm is claimed to be violated, and the manner in which the norm is claimed to have been violated.

outside the guidelines, "appellate courts look to the reasons set forth on the record for the sentencing court's deviation; if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, the sentence will be upheld." *Commonwealth v. Mouzon,* 828 A.2d 1126, 1129–1130 (Pa.Super.2003). And, the sentencing code requires the trial court to consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721.

 ¶ 22 Appellant claims that the aggravating factors identified by the trial court are not supported by the evidence. Appellant states that "while the trial court's opinion portrays its sentencing decision as having been carefully crafted after due consideration to the sentencing guidelines, the sentence at issue was in reality an extreme exercise in retribution and vengeance and a total condemnation of the [appellant] as a human being." Appellant's Brief, at 45. Appellant's claim is meritless.

¶ 23 The sentences imposed by the lower court included the following: criminal attempt to commit aggravated indecent assault, 36–72 months' incarceration; sexual assault, 60–120 months' incarceration; indecent assault, 3–24 months' incarceration on each of the seven counts, to run concurrently with each other; and corruption of minors, 9–60 months' incarceration on each of the two counts. The sentences of 3–24 months' incarceration imposed on each of the seven counts of indecent assault were to run concurrently with each other, yet consecutive to all of the other sentences. With the exception of the sentence imposed for sexual assault, the sentences on the other convictions were all within the standard range suggested by the sentencing guidelines.

¶ 24 With regard to the sentence for sexual assault, the trial court considered the pre-sentence report, trial counsel's arguments on appellant's behalf, the Commonwealth's arguments, the victims' and the victims' family members' statements, and appellant's own pre-sentence statements. The trial court then provided reasons for sentencing appellant within the aggravated range, including the age of the victims, the intimidation of the victims by appellant, and the abuse of the confidences given to him by one of the victims in a time of crisis. The trial court clearly considered and articulated that the penalties imposed were individualized and tailored to appellant based on the gravity of the offenses and the need to protect the community. Therefore, the trial court did not abuse its discretion in sentencing appellant on these charges.

 ¶ 25 Finally, appellant challenges the sentencing guidelines of Pennsylvania as unconstitutional under the United States Supreme Court's recent decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[9] As opposed to the determinate guidelines of Washington State at issue in *Blakely,* the Pennsylvania guidelines are indeterminate and *Blakely* is not applicable here. *Id.* at 2540.

¶ 26 Pennsylvania utilizes an indeterminate sentencing scheme with presumptive sentencing guidelines which limit the judge's discretion only concerning the minimum sentence. 42 Pa.C.S.A. § 9721; 204 Pa.Code § 303.9(h). The United States Supreme Court has previously determined that this system does not violate the Sixth Amendment so long as the enhanced minimum sentence is not beyond that authorized by the jury verdict. *Harris v. U.S.,*

---

9. While the *Blakely* decision was rendered on June 24, 2004, after the instant matter's judg-ment of sentence of March 17, 2004, we will nevertheless address the *Blakely* concerns.

536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (U.S.2002). Because of the link with the maximum sentence, enhanced minimum sentences, when enhanced by factors in the guidelines, are not beyond sentences authorized by the jury verdict. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *Blakely* is only implicated in Pennsylvania to the extent that an enhanced minimum term leads to a longer period of incarceration by extending the date at which the defendant is eligible to be released. Yet, because there is no limit, other than the statutory maximum, on the maximum term a judge may set, and due to the discretion vested in the parole board, the Pennsylvania sentencing scheme and guidelines evade even these *Blakely* concerns. The *Blakely* Court, itself, noted that indeterminate guidelines do not increase judicial discretion "at the expense of the jury's function of finding the facts essential to a lawful imposition of penalty," and judicial (or parole board) factfinding does not infringe on a defendant's "legal right to a lesser sentence." *Blakely*, 124 S.Ct. at 2540.

¶ 27 Here, the trial court did not employ an enhancement provision based on a judicially determined fact, but instead, imposed its sentence pursuant to the discretion provided it under the sentencing code and the sentencing guidelines. The sentence was proper under the code and the guidelines, and the guidelines, themselves, are constitutional under *Blakely*.

¶ 28 Judgment of sentence affirmed.