J-S59043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EFRAIN MIRANDA III | : | |
| | : | |
| Appellant | : | No. 801 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 6, 2017
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0004828-2016

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 26, 2020**

Efrain Miranda III ("Miranda") appeals from the judgment of sentence entered on June 6, 2017, following his guilty plea to one count of conspiracy to commit burglary.[1] Miranda contends that the trial court imposed an excessive sentence. We affirm.

While already serving a prison sentence on a prior conviction, Miranda concocted a scheme whereby he directed certain individuals to burglarize a judge's house in an effort to reduce his sentence by providing information to the authorities about those individuals who intended to burglarize the judge's residence. On the evening of July 21, 2016, after having gone to bed, Judge Robert Steinberg and his wife heard a knock at their door. N.T., 6/6/17, at 12. When Judge Steinberg went to answer the door, individuals stated that

_____

[1] 18 Pa.C.S.A. § 903.

their car was broken down and they wanted to come in to use the phone. *Id.* Judge Steinberg refused to allow the individuals entry into the house and he called the police. *Id.* The individuals left before the police arrived. *Id.* at 12-13. The police were able to obtain fingerprints from the rear door of the residence and they set up a series of surveillance cameras around the property. *Id.* at 13.

One week later on July 28, 2016, after the Steinbergs had gone to bed, they heard a large bang on their rear door. *Id.* Judge Steinberg got out of bed and saw individuals running from the property. *Id.* at 13-14. He called the police. *Id.* When the police arrived, they discovered that the rear door of the house had been opened and there was a large amount of black duct tape affixed to the glass rear door. *Id.* at 14. A review of the security surveillance cameras that were placed around the property revealed that at approximately 20 minutes after midnight, a male with a mask on approached the rear door of the Steinberg residence, opened the screen door, and removed a roll of black duct date from his pants. *Id.* A second male then appeared in the video with a handgun. *Id.* at 14-15. The male used the handgun to strike the door twice but the door didn't break. *Id.* at 15. The individuals then ran away from the property. *Id.*

Prior to the two incidents at the Steinberg residence, Miranda had written numerous letters to the Lehigh County District Attorney's Office claiming that he was aware of plans to have Judge Steinberg harmed. *Id.* at 9-11. Through its investigation, the Commonwealth eventually discovered that

Miranda had approached fellow inmates about burglarizing Judge Steinberg's house. *Id.* at 19-20. However, Miranda did not tell the other inmates that the location of the burglary was a judge's house. Rather, he indicated that the house belonged to a drug dealer who possessed cash, guns, and drugs. *Id.* at 20-21, 23. Miranda later admitted to providing fellow inmates with Judge Steinberg's address and directed them to burglarize the home. *Id.* at 21. He also admitted that he knew that the residence was a judge's house but he told the inmates that it was a drug dealer's house. *Id.* Miranda did this in the hopes of receiving a reduction in his sentence by providing information to the authorities regarding the burglary at Judge Steinberg's house. *Id.* at 22-25.

On June 6, 2017, Miranda pled guilty to conspiracy to commit burglary. He received a sentence of to eight and a half to 20 years' imprisonment, to run consecutively to a sentence he was already serving. Miranda initially filed an untimely appeal, which this Court quashed. After the trial court reinstated his post-sentence motion and direct-appeal rights, Miranda filed a motion to reconsider and modify sentence, which was granted in part and denied in part. Specifically, the trial court granted Miranda's request to impose a Risk Recidivism Reduction Incentive ("RRRI") minimum sentence of 85 months, but denied Miranda's request to modify the underlying sentence.

Miranda filed this timely appeal and raises a single issue: "Whether the trial court erred in sentencing the Appellant to a harsh and excessive sentence when the sentence imposed far exceeded the sentencing guidelines?" Miranda's Br. at 5 (unnecessary capitalization omitted).

Miranda' challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa.Super. 2018), *appeal denied*, 206 A.3d 1029 (Pa. 2019). Before reviewing the merits of Miranda's claim, we must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019).

Here, Miranda has complied with the first three requirements: his appeal is timely, he preserved the issue in a post-sentence motion, and his brief includes a statement of the reasons for allowance of appeal. We now turn to whether Miranda has raised a substantial question.

A substantial question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010). Miranda's Pa.R.A.P. 2119(f) statement asserts that the sentencing court sentenced Miranda outside of the sentencing guidelines based solely on the seriousness of the offense without considering all relevant factors. Miranda's Br. at 14-15. Such a claim raises a substantial

question. *See Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa.Super. 2009) (explaining that "an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question"); *Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa.Super. 2003) (*en banc*) (stating that a substantial question is raised where appellant claims the sentencing court imposed an aggravated range sentence without considering mitigating circumstances). Thus, we proceed to the merits of Miranda's claim.

Miranda contends that his sentence is manifestly excessive and unjust because it fell outside of the sentencing guidelines. Miranda's Br. at 14. He asserts that the standard range sentence for conspiracy to commit burglary under the sentencing guidelines is 18 to 24 months' imprisonment and the aggravated range provides for a minimum sentence of up to nine months longer than the upper limit of the standard range. *Id.* at 18. Miranda argues that his sentence of eight and a half to 20 years' imprisonment far exceeded the sentencing guidelines and the trial court failed to give sufficient reasons for such an extreme deviation. *Id.* at 12.

Miranda emphasizes that he neither engaged in nor encouraged acts of violence to the victims and no physical harm was caused to anyone. Rather, he contends that his actions were merely a severely misguided attempt to earn a reduction in his jail sentence by providing information about the individuals involved in the burglary. *Id.* at 24, 26. According to Miranda, the trial court improperly focused only on the harm that could have occurred as a

result of Miranda's scheme, and failed to consider Miranda's lack of violent history, age, personal characteristics, or potential rehabilitation. *Id.* at 21, 23. Miranda maintains that the potential for harm was already taken into account in the sentencing guidelines when determining the grading of the offense and the applicable offense gravity score. *Id.* at 25.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018), *appeal denied*, 202 A.3d 41 (Pa. 2019) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Further, "[w]here the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Moury*, 992 A.2d at 171 (quotation marks and citation omitted).

Here, the trial court sentenced Miranda outside the sentencing guidelines. "It is well established that the [s]entencing [g]uidelines are purely

advisory in nature." ***Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007). A "sentencing court is permitted to deviate from the sentencing guidelines; however, the court must place on the record its reasons for the deviation." ***Commonwealth v. Garcia-Rivera***, 983 A.2d 777, 780 (Pa.Super. 2009) (citations omitted); 42 Pa.C.S.A. § 9721(b). Indeed,

> the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1264 (Pa.Super. 2012) (citation and brackets omitted). "Where an excessiveness claim is based on a sentence outside the guidelines, appellate courts look to the reasons set forth on the record for the sentencing court's deviation; if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, the sentence will be upheld." ***Commonwealth v. Smith***, 863 A.2d 1172, 1177-1178 (Pa.Super. 2004) (quotation marks and citation omitted). Further, "this Court should not reweigh the proper sentencing factors considered by the trial court and impose our own judgment in the place of the trial court." ***Commonwealth v. Peck***, 202 A.3d 739, 747 (Pa.Super. 2019).

Here, the trial court provided the following statement before imposing Miranda's sentence:

Mr. Miranda, I read the presentence investigation of three years ago, and I can't believe you're standing in front of me pleading guilty to a crime with these particular circumstances because I looked at that presentencing investigation, and I mean, by all accounts that you were a – you're a pretty good guy. You didn't finish high school. You finished eleventh grade at Dieruff.

You didn't have any mental problems.

You don't really have a drug and alcohol problem.

You owned your own business.

You know, you're married and have two children who you helped raised. You helped raise your own wife's two children, your two step-children, your two step-daughters.

By all accounts, you know, you were a good person. Then, you got this 12 to 24 years. This is the first time that you had - I had no idea what sentence you got. But, you know, drug dealing is a risky business. You just don't know what is going to happen.

You should have just did your time and gotten out at the end of your sentence, and you wouldn't bat an eyelash. We have more drug dealers in jail than they know what to do with. You might have even gotten out early.

But then you cooked up this scheme, and it's incredibly interesting to me as how you got all these other people involved in this. And you are going down one road, and they're going down another road, you know. If I were you, I wouldn't want to be near these people. They're all going to state prison because of what you concocted.

I understand how you were trying to get out of jail. You know, you were going to be the hero. I'm the person that's responsible for saving Judge Steinberg's life. I'm the person who basically stopped this crime against Judge Steinberg.

Well, basically, you sent all these people into motion. And, you know, judges often talk about things that help society, the safety of the community and conduct, you know, threatening harm to others. A lot of times that's just, you know, kind of said there because they're vaguely involved.

This was dead serious. Twice these people went to the doors. You probably didn't know what they were doing, but you set the whole thing in motion. People with guns trying to break in after night.

In fact, this wasn't even what I call the run of the mill burglary. The run of the mill burglar does not want to get caught, does not want to deal with anybody.

The sentencing guidelines for burglary is probably proper for that type of offense, for that type of crime that is committed. Someone sneaks into a house, hears the slightest sound, bark of a dog or movement, they get out of there. That's what a routine burglary is.

This, in fact, was - never got any further, fortunately. They never had entry. This was basically going to be a home invasion burglary and robbery. And when that stuff occurs, people are hurt and injured. We're not talking sentencing here. We're talking multiple years. Those type of people go to jail for 20 to 40, 30 to 60 years.

And here, this was just fraught with problems. We know one of the individuals had a gun, so, hey, if you're not going to use it, why carry it? So what kind of things could have occurred, some sort of gun fight between the judge and the robbers, cops and robbers shoot out. He could have been killed. His family could have been killed. The people who pled guilty to these charges, they could have been killed.

Now, to certain reason, they understood the risk going in because they thought they were going in to get a drug dealer, and there is a reasonable amount of risk to them. So I don't really feel that bad for them. That's not really the case. But, really, what you did, whether it was Judge Steinberg or basically any other person, what you did was put a homeowner in danger of death or serious bodily injury for your own personal reasons.

I don't think there was any intent on your part to want any physical harm to occur to the Steinbergs. But, the very way this was concocted had this incredible risk of causing serious injury to both the victims and the people that were involved with you. It's just automatic.

> This is not a typical burglary case. You know, I'm not even making a decision on the deadly weapon enhancement because it's irrelevant in my opinion in this case because this is a sentence that clearly is not a standard range burglary conspiracy sentence. It's not even an aggravated range sentence. What's the maximum penalty for a reason. Sometimes you just have to give them an out, and in this case here, I'm giving you a slight break because you came in here and pled guilty today. So you're not getting the total maximum, but you are getting far more than anybody else in this case is going to get because you set the whole thing in motion. The other people wouldn't have been here if it had not been for you.

N.T., 6/6/17, at 42-46.

We conclude that the trial court properly considered the nature and circumstances of the offense and the history and characteristics of Miranda, as well as the sentencing guidelines and the PSI report. The court not only reiterated the unique facts of the case and concluded that Miranda had put this dangerous scheme in motion, but also acknowledged Miranda's mitigating factors including being a husband and a father, his lack of drug and alcohol or mental health problems, and his lack of criminal history prior to the prison sentence that he was serving. The court's reasons for its sentence expressed an appropriate consideration of the protection of the public, the gravity of the offense as it related to the impact on the life of the victims and on the community, and the rehabilitative needs of Miranda. **See** 42 Pa.C.S.A. § 9721(b). Contrary to Miranda's contentions, we do not find the trial court's reasons to be improper or unreasonable. Accordingly, we discern no abuse of discretion.

Judgment of sentence affirmed.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/20