J-S29041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                         :           PENNSYLVANIA
                                         :
           v.                       :
                                         :
                                       :
NATHAN WILLIAM WEAVER       :
                                       :
         Appellant          :   No. 119 MDA 2023

Appeal from the Judgment of Sentence Entered July 25, 2022
In the Court of Common Pleas of Clinton County
Criminal Division at No(s):  CP-18-CR-0000432-2019

BEFORE:   MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED: NOVEMBER 3, 2023**

Nathan William Weaver appeals from the judgment of sentence imposed following a jury convicting him of sexual assault, aggravated indecent assault, and indecent assault.[1] For these offenses, Weaver was aggregately sentenced to nine and one-half to twenty-four years of incarceration. On appeal, Weaver presents three issues for our consideration, contending that the evidence was insufficient to sustain the jury's verdict on all counts, that the court erred in allowing prior uncharged "bad act" testimony from two witnesses, and that the Commonwealth failed to demonstrate, by clear and convincing evidence, that he was a sexually violent predator ("SVP"). After a thorough review of the record, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. § 3124.1; 18 Pa.C.S. § 3125(a)(1); and 18 Pa.C.S. § 3126(a)(1), respectively.

Briefly, as recounted by the trial court:

On or about October 26, 2018, the victim … (age 21), attended an apartment party with her sister and her sister's fiancé, … Weaver. The victim acknowledged that she was consuming alcoholic beverages and, around 3:15 a.m., went to a bedroom and laid down on the bed. A short time thereafter, the victim heard [Weaver] enter the room and state that he was going to sleep on the floor. The victim later realized that [Weaver] was in her bed and kissing her. The victim believed that it was her boyfriend who entered into her bed. Later on she felt her vagina being digitally penetrated and her … shorts being removed. At that point she felt someone having sexual intercourse with her. She eventually realized that it was not her boyfriend and that it was [Weaver]. She pushed [Weaver] off of her and waited until [he] fell asleep. At that point she left the room and called the police. At the time of this event [Weaver] was the victim's sister's fiancé. [Weaver] denied having sex with the victim but later DNA testing confirmed [Weaver's] DNA on the vaginal swab.

Trial Court Opinion and Order, 7/15/22, at 1-2.

In a subsequent opinion, the court expanded upon the factual underpinnings of this case:

The victim testified that on the night in question, she was present at her own rental unit near … Lock Haven University, which she was attending as a student. Also present at the time of the incident was the victim's sister and her sister's fiancé, [Weaver].

The participants consumed alcoholic drinks and the victim made a decision to proceed to her own bedroom in the early morning hours to lay down and rest. Shortly thereafter, [Weaver], uninvited, entered the victim's bedroom indicating that he was going to sleep on the floor. The victim, while under the influence of alcohol and attempting to sleep in her own bed, realized that someone was in her bed kissing her, believing it to be her boyfriend. A short time later the victim felt her vagina being penetrated by fingers and her clothing being removed. The encounter proceeded to a point where the victim was engaging in vaginal intercourse with the person in her bed whom she still

- 2 -

believed to be her own boyfriend. A light outside of the window illuminated [Weaver's] body and the victim identified [Weaver's] tribal tattoos and gold chains. The victim immediately pushed [Weaver] off of her. [Weaver] put the victim's clothing back on her and then proceeded to go to sleep with the victim fleeing the bedroom and calling the police. The victim clearly testified at the time of trial that she in no way consented to any type or level of sexual activity with [Weaver] and that she never would.

Trial Court Opinion and Order, 1/10/23, at 2-3.

At trial, following a hearing, the lower court granted the Commonwealth's motion to introduce, pursuant to Pennsylvania Rule of Evidence 404(b), the testimony of two individuals who both testified that Weaver had engaged in nonconsensual, uncharged bad acts of a sexual nature on them. These acts were alleged to have occurred some eight to ten years prior to the present incident.

Ultimately, a jury found Weaver guilty of the three aforementioned crimes. Weaver was correspondingly sentenced to nine and one-half to twenty-four years of incarceration and additionally determined by the trial court to be an SVP.

After sentencing, Weaver filed a timely post-sentence motion. However, the trial court ruled on this motion—the determination Weaver has now appealed from—outside of its 120-day period to do so, as outlined in Pennsylvania Rule of Criminal Procedure 720(B)(3)(a). Moreover, once that 120-day period had elapsed, the clerk of courts failed to enter and distribute an order deeming the motion denied on behalf of the trial court by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(c). While, ordinarily, an appeal taken from

a decision issued outside the 120-day period would be untimely, this court has "found a breakdown [in court operations] where the clerk of court did not enter an order notifying the appellant that his post-sentence motion was denied by the operation of law." ***Commonwealth v. Patterson***, 940 A.2d 493, 499 (Pa. Super. 2007) (citation omitted). As such, and because Weaver filed his notice of appeal within thirty days of the trial court's order denying his post-sentence motion, we may excuse the untimely filing of Weaver's notice of appeal and proceed to adjudicate this appeal's merits.

On appeal, Weaver asks:

1. Was the evidence submitted to the jury sufficient to sustain its guilty verdicts?

2. Is Weaver entitled to a new trial because the court erred in allowing 404(b) testimony?

3. Was the evidence sufficient, based on a clear and convincing evidence standard, to establish that Weaver met the definition of an SVP?

***See*** Appellant's Brief, at 12.

As Weaver's first issue contests the sufficiency of evidence employed against him at all three guilty verdicts, we note our well-settled standard of review:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth may not

- 4 -

preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014-15 (Pa. Super. 2002) (citations omitted).

Relevant to the claim at hand, "it is well-established that the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citations and internal quotation marks omitted). We also emphasize that "resistance to sexual assault is not required to sustain a conviction." *Commonwealth v. Smith*, 863 A.2d 1172, 1176 (Pa. Super. 2004).

Weaver does not discuss, with any particularity, the elements of any of his convictions. Instead, he argues that "the evidence failed to show that the alleged victim did not consent to the alleged sexual activity or, in the alternative, [Weaver] was not aware that the victim was not consenting to said sexual activity." Appellant's Brief, at 18. Specifically, Weaver illuminates that: (1) Weaver got into the victim's bed; (2) Weaver and the victim engaged in sexual activity without any verbal or physical resistance, with the victim

seemingly going along with this activity; and then, (3) when the victim realized Weaver was not her boyfriend, she pushed Weaver away, leading to an immediate cessation of sexual activity between the two. *See id*. Weaver contends that "a person in [his] position would have believed that the victim was consenting to the activity until she pushed him off." *Id*. As such, the Commonwealth failed to prove non-consent and that Weaver recklessly disregarded that non-consent. *See id*., at 19 (citing *Commonwealth v. Carter*, 418 A.2d 537 (Pa. Super. 1980)).

Weaver is correct insofar as all of his convictions required the Commonwealth to demonstrate beyond a reasonable doubt that the complainant did not consent to his actions. *See* 18 Pa.C.S. § 3124.1 ("without the complainant's consent"); 18 Pa.C.S. § 3125(a)(1) ("without the complainant's consent"); 18 Pa.C.S. § 3126(a)(1) ("without the complainant's consent"). We note that, because none of the relevant statutes define the mental state sufficient to establish the defendant's guilt, the Commonwealth was required to prove that Weaver acted intentionally, knowingly, or recklessly with respect to each material element of the offenses. *See* 18 Pa.C.S. § 302(c); *A.L. v. Pennsylvania State Police*, 274 A.3d 1228, 1240 (Pa. 2022) (indicating that the offense of sexual assault requires at least a finding of reckless mental state pursuant to 18 Pa.C.S. § 302(c)); *Carter*, 418 A.2d at 540-41 (stating that because the indecent assault statute is silent as to the culpability sufficient to establish the crime, 18 Pa.C.S. § 302(c) requires

that the Commonwealth establish that the defendant acted, at a minimum, recklessly with respect to the material elements of the offense). Recklessness, which requires the lowest level of proof among the three levels of intent, **see** **A.L.**, 274 A.3d at 1240, is defined in the Crimes Code as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3). In accordance with these precepts, the trial court instructed the jury that to find Weaver guilty of sexual assault, aggravated indecent assault, and indecent assault, they had to find that the Commonwealth established beyond a reasonable doubt that Weaver "acted knowingly or at least recklessly regarding [the victim's] nonconsent." N.T., 10/1/21, at 43-44 (sexual assault charge); **see also id.** at 44 (aggravated indecent assault charge), 44-46 (indecent assault charge).

We first note that the victim unequivocally expressed at trial that she did not engage in consensual sex with Weaver on the night in question and furthermore never would. **See** N.T., 9/30/21, at 59-60. In specifically recalling events as they happened, the victim testified that after Weaver had entered her bedroom, he laid down on the floor and then, thereafter, the victim fell "asleep or lost consciousness again[.]" **Id.**, at 41-42. The next thing that the victim remembered was "someone kind of laying in the bed behind [her]

- 7 -

reaching around over [her] hip and inserting … [his] finger through [her] shorts into [her] vagina." *Id*., at 42. The victim was not awake when this other individual, later identified as Weaver, got into her bed. *See id*. At some point, the victim said her boyfriend's name "a few times during this assault asking if it was [the boyfriend, Mark] … [The victim] just … said [Mark's] name out loud with a question mark to try to make sense of it because [the victim] knew it couldn't be him but … wasn't sure who else would be in that situation." *Id*., at 43. The victim said "Mark, Mark" multiple times. *Id*. There was no response from Weaver, who then proceeded to take off the victim's pants and underwear and vaginally penetrate the victim with his penis. *See id*., at 43-44, 47. As soon as the victim realized that it was Weaver who was engaging in sexual contact with her when she saw his distinctive tattoos and gold chains, she immediately pushed him off of her. *See id*., at 46-47.

When viewed in a light most favorable to the Commonwealth, we conclude there was sufficient evidence to demonstrate that Weaver acted recklessly with respect to the victim's absence of consent. In addition to the fact that Weaver had been engaged to the victim's sister, there is no evidence that prior to Weaver's actions in the victim's bed, Weaver and the victim were occupied in any kind of romantic or sexual activity with one another. More importantly, however, with Weaver suddenly appearing in the victim's bed and then proceeding to digitally penetrate the victim without asking whether she wanted to engage in any sexual activity, the victim calling out her boyfriend's

name in order to elicit a response from Weaver establishes that he consciously disregarded what a reasonable person would have done in that specific moment: cease engaging in sexual activity. With there being evidence from which a jury could have concluded that the victim did not consent to Weaver's actions, Weaver's sufficiency claim necessarily fails.

In his second claim, Weaver suggests that he is entitled to a new trial because the court erred in allowing the testimony of two witnesses who both alleged that Weaver had committed prior uncharged bad acts on them of a sexual nature. Weaver reasons by analogy to a previous Commonwealth appeal in this case wherein another panel of this Court ruled that the lower court did not abuse its discretion in denying the Commonwealth's pre-trial motion to introduce prior bad acts evidence pursuant to Pennsylvania Rule of Evidence 404(b). **See Commonwealth v. Weaver**, 2020 WL 5890671, 484 MDA 2020 (Pa. Super. filed Oct. 5, 2020) (unpublished memorandum).

The Commonwealth attempted to admit Weaver's 2011 convictions for aggravated assault and indecent assault, arguing that the instant case's factual elements were similar to the facts underpinning his 2011 convictions, as both evidenced a common plan. **See id**., at *4. However, this Court ultimately found that Weaver's actions were not usual or distinctive enough to constitute a common scheme, notwithstanding that sexually assaultive behavior and alcohol consumption were present in both instances. **See id**, at *7. In addition, despite the Commonwealth's assertion that unconsciousness

of the victim was a key element of both sexual assaults, such an averment was not supported by the record in the present case, further demonstrating dissimilarities between Weaver's prior convictions and the facts as had been alleged at the time in the case at bar. ***See id***.

Preliminarily,

> [i]t is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Saez***, 225 A.3d 169, 177-78 (Pa. Super. 2019) (citations and internal quotation marks omitted).

Under Pennsylvania Rule of Evidence 404, evidence of other crimes, wrongs, or acts is inadmissible to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the

evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

As highlighted in the prior appeal, "[e]vidence of a prior crime may also be admitted to show a defendant's actions were not the result of a mistake or accident, where the manner and circumstances of two crimes are remarkably similar." **Commonwealth v. Tyson**, 119 A.3d 353, 359 (Pa. Super. 2015) (citations omitted); **see also Commonwealth v. Ross**, 57 A.3d 85, 102 (Pa. Super. 2012) (indicating that "much more is demanding than the mere repeated commission of crimes of the same class[.] The device used must be so unusual and distinctive as to be like a signature.") (citation and emphasis omitted). Nevertheless, "[t]he Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." **Commonwealth v. Sitler**, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (citations omitted).

Weaver summarizes the bad acts testimony of the two witnesses as follows:

> [K.E.] testified that she went to a party at a house in Trevorton, Pennsylvania approximately during the time period 2010/2011. She testified that after drinking alcohol she became sick and tired and went to sleep. She said she woke up to heavy breathing behind her. She noticed that [Weaver] was there. He allegedly tried to stick his hands down her shirt. She lifted her elbow and shrugged to scare him away. He allegedly jolted back and tried again. At that point she threw her elbow harder and [Weaver] allegedly jumped and knocked the garbage can over and ran out of the room.

> [K.C.] testified that sometime in early June of 2009 she

went to a party. She was drinking. She said she got way too intoxicated. She was taken to a futon-type couch in the basement where she went to sleep. She testified that she woke up to someone trying to get in her pants and trying to fondle her genitals. She testified that she was able to identify [Weaver] as being the person who attempted to molest her. However, she was able to escape from the alleged molestation.

Appellant's Brief, at 23-24 (record citations omitted).

While Weaver has tersely summarized what these witnesses said at trial, he has not drawn any comparison to the facts of the present case or cited to authority that demonstrates an abuse of discretion committed by a lower court. Instead, he baldly concludes that their testimony "was not so nearly identical of [the victim] so as to be like a fingerprint." ***Id***., at 24. We agree with Weaver that no charges were ever brought in connection to the claims made by these witnesses, which were several years removed from the facts at issue in the present case; however, a lack of criminal charges does not vitiate the ability for the Commonwealth to introduce evidence of prior bad acts. Further, the lower court gave a specific cautionary instruction as it pertained to the testimony of the two witnesses, limiting jury consideration of their testimony to that of showing Weaver's absence of mistake and/or common plan. ***See*** N.T., 10/1/21, at 46-47.

Without any specific contrast made between the two witnesses and the present victim, Weaver has failed to demonstrate his "heavy burden" that the lower court abused its discretion in allowing this prior bad act testimony. ***Saez***, 225 A.3d at 177-78. Notwithstanding the infirmity in his argument, the

court justified its decision based on the similar facts that were present: (1) nonconsensual sexual acts being performed; (2) by Weaver on like-aged individuals; (3) who were acquaintances of Weaver; (4) in the presence of excessive alcohol consumption; (5) with the acts occurring in dark rooms, in the middle of the night, away from the rest of the party-like environments. *See* Opinion and Order, 1/10/23, at 8. The court predicated its admission of the two witnesses on the fact that their testimony was being used to show that there was no mistake by Weaver as it related to his present actions and, too, that Weaver "clearly ha[d] a common plan, scheme, and design." N.T., 10/1/21, at 31. Although this Court may have reached a different conclusion in allowing this testimony to be adduced at trial, Weaver was required to demonstrate that the lower court, in fact, abused its discretion via, *inter alia*, "manifest unreasonableness." *Saez*, 225 A.3d at 178. In the absence of any salient reason to reverse the lower court's determination, we find that it did not abuse its discretion in allowing this prior bad act testimonial evidence.

In his third issue, Weaver argues that the evidence was insufficient for him to be deemed an SVP. Weaver claims that the Commonwealth did not provide clear and convincing evidence that he should be adjudicated as such, given the fact that his expert witness, Dr. Thomas F. Haworth, Ph.D., refuted the testimony of a Sexual Offenders Assessment Board ("SOAB") member's expert testimony, offered by the Commonwealth. *See* Appellant's Brief, at 25. In particular, while the SOAB member's testimony indicated that Weaver

suffered from the paraphilic disorder of non-consent, Dr. Haworth opined that Weaver was, like the complainants, intoxicated while engaging in sexual activity, so Weaver did not meet that disorder's criteria. Moreover, Dr. Haworth illuminated the non-consensual nature of most sex-related crimes. Accordingly, other than the SOAB's member's testimony "there was no evidence to sustain the [lower court's SVP determination]." **Id**., at 26.

"[I]n reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." **Commonwealth v. Moody**, 843 A.2d 402, 408 (Pa. Super. 2004) (citation omitted).

> Clear and convincing evidence means that witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the [fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

**Id**. (citation and internal quotation marks omitted). An SVP is "an individual who committed a sexually violent offense" and "who is determined to be a sexually violent predator ... due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12.

Other than challenging the SOAB member's credibility to the benefit of

his own expert's credibility, Weaver has failed to provide any specific basis to warrant a conclusion that the evidence was insufficient to find him to be an SVP. Conversely, the court after evaluating the testimony it was presented found, *inter alia*, that Weaver had prior sexual-related arrests and convictions, which meant that "[h]is arrest history suggests an inability to learn from past mistakes and/or [is an] endorsement of antisocial traits." Opinion and Order, 7/15/22, at 5. Further, Weaver "failed to successfully complete his prior sentence and was revoked from probation as a result of this offense." *Id*. "At the time of the offense [Weaver] was 31-years of age and the victim was 21-years of age. Both [Weaver] and the victim were consuming alcohol prior to the sexual assault. Alcohol may have reduced [Weaver's] inhibitions to sexually offend and made the victim more vulnerable." *Id*.

As to specific testimony, the court discussed the opinion of the SOAB member who indicated that Weaver "may suffer from alcohol abuse/dependence, which is considered a concurrent condition and not relevant to the sexually offending behavior." *Id.* That member then went on to conclude that "[b]ased on his pattern of sexually assaulting vulnerable, intoxicated, non-consenting females, his offending behavior [met] the diagnostic criteria for other specified paraphilic disorder-non-consent where the target of his deviate urges and behaviors are non-consenting, sleeping females." *Id*., at 5-6. This disorder is considered to be a mental abnormality. *See id*., at 6. The SOAB member also stated that given his past offenses,

- 15 -

there was a higher chance of him reoffending. ***See id***. In contrast, the court "was not persuaded by the testimony of [Dr.] Harworth[.]" ***Id***.

Other than citing to one piece of authority that broadly defines the applicable "clear and convincing evidence" standard, Weaver has provided no substantive refutation of the lower court's findings and ultimate adjudication of him as an SVP. Instead, Weaver wants this Court to credit his own expert's testimony at the expense of the SOAB member's findings.

The court expressly predicated its decision on the SOAB member's expert testimony, which identified Weaver as having "other specified paraphilic disorder, nonconsent" and engaging in "predatory" behavior. SVP Determination Hearing, 7/5/22, at 12-13. Based on the information that was gathered and the subsequent analysis thereof, the member unambiguously concluded that Weaver "suffers from a mental abnormality and personality disorder as defined by Pennsylvania law." ***Id***., at 20. In the absence of any clear indicia that the court made an erroneous conclusion in relying upon this expert testimony, the evidence was sufficient to find that Weaver was an SVP. As such, because we may not reweigh credibility determinations, which is effectively the only clear argument advanced by Weaver in this domain, Weaver's third issue merits no relief.

With none of Weaver's claims warranting any disturbance of his sentence, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/03/2023</u>